UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| TABBATHA T.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:18-cv-00018-RLY-DML |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. §

636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its

appropriate disposition.  As addressed below, the Magistrate Judge recommends

that the District Judge REVERSE and REMAND the decision of the Acting

Commissioner of the Social Security Administration ("Commissioner") that plaintiff

Tabbatha T. is not disabled.

---

[1]     To protect privacy interests of claimants for Social Security benefits and
consistent with a recommendation of the Court Administration and Case
Management Committee of the Administrative Office of the United States courts,
the Southern District of Indiana has chosen to use only the first name and last
initial of non-governmental parties in its Social Security judicial review opinions.
The plaintiff will therefore be referred to by her first name in this Report and
Recommendation.

## Introduction

Plaintiff Tabbatha T. applied in September 2014 for Disability Insurance Benefits under Title II of the Social Security Act, alleging she has been disabled since July 22, 2014.  Acting for the Commissioner of the Social Security Administration following a hearing by video on November 2, 2016, administrative law judge Peter Jamison issued a decision on November 29, 2016, that Tabbatha is not disabled.  The Appeals Council denied review of the ALJ's decision on December 7, 2017, rendering the ALJ's decision for the Commissioner final. Tabbatha timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Tabbatha contends that the Commissioner's decision should be reversed and remanded because of two alleged errors: (1) the ALJ did not give proper weight to the opinion of her treating physician and (2) the ALJ ignored testimony by the vocational expert that a limitation would eliminate all jobs. As addressed below, the court finds that the argument regarding the vocational expert is based on a misreading of the transcript and is therefore rejected.  The court finds too, however, that the ALJ's evaluation of the treating physician's opinion does not withstand scrutiny under the court's standard of review.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Tabbatha's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Tabbatha is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed

3

impairment or presents medical findings equal in severity to the criteria for a listed

impairment, then the claimant is presumptively disabled and qualifies for benefits.

20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then her residual

functional capacity (RFC) is determined for purposes of steps four and five.  RFC is

a claimant's ability to do work on a regular and continuing basis despite her

impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the

fourth step, if the claimant has the RFC to perform her past relevant work, then she

is not disabled.  The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on her vocational profile (age, work

experience, and education) and RFC; if so, then she is not disabled.

The claimant bears the burden of proof at steps one through four.  *Bowen v.*

*Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the

Commissioner has the burden at step five to show that work exists in significant

numbers in the national economy that the claimant can perform, given her

vocational profile and functional capacity.  20 C.F.R. § 404.1560(c)(2); *Young v.*

*Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is

deferential.  A court must affirm if no error of law occurred and if the findings are

supported by substantial evidence.  *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th

Cir. 2001).  Substantial evidence means evidence that a reasonable person would

accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I.   The ALJ's Sequential Findings

Tabbatha was born in 1974, was 40 years old as of her alleged disability onset date in July 2014, and was 42 years old at the time of the ALJ's decision. Tabbatha's immediate work history before her alleged onset date included 10 years as a surgical technologist. She worked at a hospital and was generally in charge of cleaning and sterilizing surgical instruments. (R. 36). Her alleged onset date coincides with the time that she took medical leave from her job because she began suffering from shooting, stabbing, and numbing pains in her arms, legs, and back. (R. 37-38).

At step one, the ALJ found Tabbatha had not engaged in substantial gainful activity since her alleged onset date in July 2014. At step two, the ALJ identified

the following as severe impairments:  osteoarthrosis and allied disorders,

fibromyalgia, affective disorders, anxiety disorders, disorders of the spine, and

irritable bowel syndrome.  At step three, he found that no listings were met or

medically equaled.  Tabbatha does not challenge the ALJ's findings at steps one

through three.

The ALJ next determined Tabbatha's residual functional capacity (RFC) for

purposes of conducting the required analysis at steps four and five. He restricted

Tabbatha to light work (six hours of sitting and six hours of standing and/or

walking, and lifting 20 pounds occasionally and 10 pounds frequently) with some

additional postural, climbing, and hand and foot restrictions.  (R. 21).  He imposed

other restrictions because of Tabbatha's mental impairments, which had the effect

of limiting her to unskilled work.

Based on the RFC and the testimony of a vocational expert, the ALJ

determined that Tabbatha could not perform her past work—all of which was

skilled.  At step five, he found (also based on the VE's testimony) that work exists in

significant numbers consistent with Tabbatha's RFC—routing clerk, marking clerk,

or inspector—and therefore Tabbatha is not disabled.

## II.    Tabbatha's Assertions of Error

Tabbatha makes two assertions of error, the first of which the court can

resolve without detailed analysis.  Tabbatha contends that the jobs the ALJ found

she can perform are not consistent with her RFC because they cannot be performed

by someone who can only "occasionally reach overhead bilaterally," a restriction in

her RFC.  The court rejects this argument because it is based on a misreading of the VE's testimony.  The VE's testimony is clear that if *all* reaching (overhead and in all other directions) is reduced to an occasional-ability level, then sedentary and light jobs would be eliminated.  (R. 54-55 and 58).  But an occasional reaching restriction affecting only bilateral overhead reaching would not eliminate the jobs of routing clerk, marking clerk, or inspector, the jobs the ALJ found she could perform.  (R. 52).

Tabbatha's second argument is that the ALJ failed to evaluate properly the opinion of her treating physician.  As addressed below, the court agrees.

### III.    Evaluation of Opinion of Treating Physician

#### A.  Factors for Determining Weight of Medical Opinions

An ALJ must address the weight he gives to medical opinions in the record, and his analysis must be guided by factors described in 20 C.F.R. § 404.1527(c). An opinion by a treating physician about the nature and severity of a claimant's impairments is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the record.  *Id.* § 404.1527(c)(2).  Controlling weight is never assigned, however, to a treating physician's opinion about whether a listing is met or about the claimant's RFC because the "final responsibility for deciding those issues is reserved to the Commissioner."  *Id.* § 404.1527(d)(2).

If the ALJ reasonably determines a treating physician's opinion does not deserve controlling weight, he must determine what weight it deserves.  The

regulation provides a list of factors to guide the evaluation.  The same factors guide

the weighing of other medical opinions, including those of state agency physicians.

The factors are the degree to which the opinion (a) is supported by relevant evidence

and explanations, (b) considered all pertinent evidence, (c) is consistent with the

record as a whole, and (d) is supported or contradicted by other factors, such as the

physician's understanding of SSA disability requirements.  *Id.* § 404.1527(c)(3), (4),

(6).  The physician's field of specialty and the nature and extent of his treatment

relationship with the claimant are also considered.  *Id.* § 404.1527(c)(1), (2), and (5).

### B.  Dr. Vorhies's Opinion

Dr. Steven Vorhies was (and presumably still is) Tabbatha's primary care

physician.  In late October 2016, he completed an "Estimate of Physical Capacities"

form and wrote a short cover letter that accompanied the form.  Dr. Vorhies stated

that Tabbatha was a long-standing patient.  (In fact, Dr. Vorhies worked at the

same hospital where Tabbatha had worked for over 10 years before taking medical

leave and then applying for disability benefits.)  He stated that she had a long

history of "significant mood disorder, obstructive sleep apnea, fibromyalgia, and

cervical disc disease." (R. 582). He further noted that the mood disorder and

obstructive sleep apnea posed significant limitations and required sedentary work,

and that the functional changes related to fibromyalgia also significantly limited

her physical capabilities.  (*Id.*)  On the form, Dr. Vorhies checked boxes in opining

that in an 8-hour work day, Tabbatha can sit up to four hours, stand for one hour,

and walk for 30 minutes.  He also noted certain lifting and carrying restrictions, postural restrictions, and limitations against hazardous work.  (R. 581).

### C. The ALJ's Evaluation of Dr. Vorhies's Opinion

The ALJ's evaluation of Dr. Vorhies's treatment history and his medical opinion is not supported by substantial evidence.  The evaluation reads in total: "[L]ittle weight is given to the opinion of Dr. Vorhies, the claimant's treating physician, who opined strict limitations for the clamant.  His opinion is extreme, and there is no evidence to provide such strict physical limitations for the claimant, such as never climbing, and walking up to 30 minutes in an 8-hour workday."  (R. 23).

The court cannot trace the path of the ALJ's reasoning that Dr. Vorhies's opinions about Tabbatha's limitations are *extreme*.  True, Dr. Vorhies found that she cannot work an 8-hour workday (has the capability to sit for four hours, stand for one, and walk for 30 minutes), but that can be considered an extreme opinion only in the context of evaluating whether Dr. Vorhies's examination and treatment of Tabbatha are inconsistent with the limitations.  Here, the ALJ's analysis of the whole of Dr. Vorhies's treatment is woefully incomplete; he cherry-picked through the records and never acknowledged the breadth or intensity of the treatment, described below.

Further, the ALJ's statement that there is "no evidence" to support Dr. Vorhies's limitations does not at all ring true.  Dr. Vorhies's examination records discuss extreme difficulties that Tabbatha has had with intractable and widespread

muscle pain and fatigue that appeared to begin suddenly in mid-2014. The records document a quest by Dr. Vorhies to look for causes, treat the problems, and engage in a studied evaluation of Tabbatha's medical condition.

It is also odd to label Dr. Vorhies's functional limitations extreme when—except for the standing and walking functions—his limits match or nearly match limitations the ALJ included in the RFC. Dr. Vorhies's limit against climbing matches the ALJ's own limit forbidding Tabbatha from climbing ropes, ladders, and scaffolds. Their lifting and carrying restrictions are the same; their reaching restrictions are the same; their postural restrictions are separated by a degree; and their restrictions against certain hazardous work also match.

Most importantly, however, the ALJ did not acknowledge (or appear even to recognize) the length and scope of Dr. Vorhies's treating relationship with Tabbatha. Dr. Vorhies—whose practice was at the same hospital where Tabbatha had worked—saw her frequently. The administrative record includes evaluation and treatment records by Dr. Vorhies that predate disability onset, continue through the onset of the physical and mental impairments the ALJ found were severe, and continue even up to the time of the hearing before the ALJ. Dr. Vorhies was the quarterback of all of Tabbatha's treatment.

He oversaw her treatment, conducted frequent examinations, referred her to specialists, reviewed with her the results of diagnostic scans, MRIs, and x-rays, prescribed medications, and gave opinions about the likely sources of her functional problems. The record contains reports from examinations by Dr. Vorhies beginning

in the summer of 2013, then occurring about 10 times over 2014 and 2015, and occasionally in 2016.  During this time, Dr. Vorhies also referred Tabbatha to physical therapy (for which she had about 10-12 sessions) and for MRIs and blood work. He referred her to a neurologist, who conducted MRIs and electromyography to attempt to determine the causes of and recommended treatment for Tabbatha's muscle pain and fatigue.  She was separately referred for a neurosurgery consultation.  She was referred to a rheumatologist because of widespread muscular and joint stiffness and pain.  She underwent injections.  She underwent a sleep study. Dr. Vorhies prescribed a CPAP machine to address fatigue problems.  And, finally, in 2016, he prescribed a TENS unit to help address Tabbatha's widespread pain symptoms.  Her symptoms, despite numerous diagnostic imaging and other testing, could not be traced to any particular structural problem, but that did not mean they were not caused by a medical impairment.

Dr. Vorhies's records, as a whole, document his analysis that Tabbatha's functional limitations are real and most likely related to fibromyalgia, an "elusive and mysterious disease" that will not show up on a laboratory test.  *See Hawkins v. First Union Corp. Long-Term Disability Plan,* 326 F.3d 914, 916 (7th Cir. 2003) (noting the difficulty in determining severity of fibromyalgia).  Dr. Vorhies's records appear fully consistent with the explanation he provided in the cover letter to his "check-the-box" functional limitation opinion that Tabbatha's restrictions are related to her fibromyalgia, mood disorder, and obstructive sleep apnea.

Given the extensive examinations, treatment, and evaluations by Dr. Vorhies and because his opinion cannot fairly be said to be without support (as the ALJ described it), the court cannot find that substantial evidence supports the ALJ's rejection of Dr. Vorhies's opinion—an opinion he rejected in favor of adopting a contrary opinion by state agency physicians. *See Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003) (contradictory opinion by a non-examining physician "does not, by itself, suffice" as grounds for rejecting an examining physician's opinion). The state agency doctors never examined Tabbatha. They also were not privy to any of the medical records post-dating January 2015, a time after which Tabbatha was seen in the emergency room, had physical therapy, underwent numerous diagnostic tests and was treated by specialists, and was seen by Dr. Vorhies at least eight or nine times: on February 6, 2015, February 27, 2015, April 24, 2015, June 24, 2015, August 24, 2015, October 20, 2015, February 2, 2016, and June 8, 2016.

The ALJ gave unwarranted short shrift to Dr. Vorhies's opinion about Tabbatha's functional capacity, and his explanations for rejecting the opinion are not supported by the record. The Commissioner's decision that Tabbatha was not disabled must therefore be reversed and remanded.

## <u>Conclusion</u>

For the foregoing reasons, the Magistrate Judge reports and recommends that the District Judge REVERSE and REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g).

12

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.


Dated:  February 22, 2019

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana



Distribution:

All ECF-registered counsel of record by email through the court's ECF system